UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE GULF STATES LONG TERM
ACUTE CARE OF COVINGTON,
L.L.C.

DAVID V. ADLER, DISBURSING                   CIVIL ACTION
AGENT

VERSUS                                        NO: 11-1659

GREGORY M. WALKER, ET AL.                    SECTION: "J" (5)

### ORDER AND REASONS

Before the Court is **Defendants' Gregory D. Frost and**

**Breazeale, Sachse & Wilson, LLP's Motion to Withdraw Reference to**

**Bankruptcy Court (Rec. Doc. 1)**, **Plaintiff David V. Adler's**

**Opposition (Rec. Doc. 3)**, and **Defendants' Reply (Rec. Doc. 6)**.

The motion is before the Court on supporting memoranda, without

oral argument.  Having considered the motion and legal memoranda,

the record, and the applicable law, the Court finds that

Defendants' Motion to Withdraw the Reference to Bankruptcy Court

(Rec. Doc. 1) should be GRANTED.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On April 20, 2009, Gulf States Long Term Acute Care of

1

Covington, L.L.C. ("Debtor") filed a voluntary Chapter 11 bankruptcy petition. On February 20, 2010, the bankruptcy court entered an order confirming the Debtor's Third Amended Plan of Reorganization ("the Plan"). On March 29, 2010, the bankruptcy court appointed David V. Adler as disbursing agent for the Debtor pursuant to the terms of the Plan and the bankruptcy court's order. Gregory D. Frost ("Frost") is a partner in the Baton Rouge office of Breazeale, Sachse & Wilson LLP ("BSW") and specializes in healthcare law. Defendants Frost and BSW represented the Debtor in several financial transactions related to its continuing operations prior to bankruptcy.

On April 18, 2011, Plaintiff Adler, pursuant to the bankruptcy court's order that he pursue claims on behalf of Debtor, filed a complaint naming Frost, BSW, and more than a dozen other parties as defendants, alleging various acts of misconduct related to Debtor's finances. Plaintiff contends that Defendants Frost and BSW conspired with other defendants to develop, facilitate, and implement a scheme to unlawfully deprive Debtor of its assets for the benefit of defendants and to the detriment of Debtor and its creditors. Plaintiff also alleges that Frost and BSW participated in various schemes after Debtor's bankruptcy filing in order to conceal, transfer, and assign

2

Debtor's remaining assets to, among others, Debtor's post filing manager.

Pursuant to District Court Local Rule 83.4.1, Plaintiff's complaint was automatically referred to the bankruptcy court as a case related to the underlying bankruptcy.  The referral was to Bankruptcy Judge Elizabeth W. Magner, who also presides over the underlying bankruptcy case.  Citing Title 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Local Rule 83.4.3, Defendants move this Court for an order withdrawing the reference to the United States Bankruptcy Court for the Eastern District of Louisiana.

Frost and BSW are only 2 of 22 defendants in the underlying adversary action; different claims are alleged as to different groups of defendants.  In summary, the claims are as follows: legal malpractice (Complaint, Bankr. E.D. La. Case No. 11-1034 (Rec. Doc. 1) (hereinafter, "Complaint"), ¶¶ 146-57**),** breach of fiduciary duty (Id. ¶¶ 158-65), breach of contract (Id. ¶¶ 166-69), fraud (Id. ¶¶ 170-73), and conspiracy (Id. ¶¶ 174-76). Plaintiff also alleges fraudulent transfers (Id. ¶¶ 186-92) and preferential transfers (¶¶ 193-95), but these claims are not alleged against the Defendants that have filed the instant motion to withdraw the reference.

## THE PARTIES' ARGUMENTS

Defendants contend that the bankruptcy court is not the proper forum to adjudicate the claims against Frost and BSW, as they are common law claims that bear no connection to the underlying bankruptcy other than the fact that they are brought on behalf of the Debtor.  Cases related to bankruptcy matters are automatically referred to bankruptcy court pursuant to Local Rule 83.4.1.  However, Title 28 U.S.C. § 157(d) provides that the district court has the discretion to withdraw this reference for "cause shown."  Relying on In re OCA, Inc., 410 B.R. 443, 449 (E.D. La. November 5, 2007), Defendants present three factors bearing on the withdrawal decision:  (1) whether the matter is a "core" or "non-core" proceeding, (2) whether the proceedings involve a jury demand, and (3) whether withdrawal would further certain goals.

Defendants chiefly assert that the case is a non-core proceeding that has no independent connection to the bankruptcy court, as the claims are not of the kind that, by their nature, could arise only in the context of a bankruptcy case.  They characterize the claims against them as common law claims for legal malpractice, breach of fiduciary duty, breach of contract, fraud, and conspiracy.  They argue that the case is a non-core

4

proceeding because it fits within none of the statutory
enumerations of core proceedings:  matters concerning the
administration of the estate, 28 U.S.C. § 157(b)(2)(A),
fraudulent and preferential transfers, id. at § 157(b)(2)(F),(H),
and the catch-all category, id. at § 157(b)(2)(O).  Defendants
argue that the claims against Frost and BSW should be categorized
as non-core claims, which weighs heavily in favor of withdrawal
of the reference.

    Defendants also assert that they are entitled to a jury
trial on the claims at hand, which can only proceed in the
district court.  Defendants submit that they are entitled under
the Seventh Amendment to a jury trial on four of the claims
against Frost and BSW (legal malpractice, breach of contract,
fraud, and conspiracy).  They allege this right to a jury trial
because (1) the cause of action is analogous to actions that
historically could only have been brought in courts of law, and
(2) Plaintiff seeks money damages, which is a legal remedy.  As a
jury trial cannot proceed in bankruptcy court, Defendants contend
that the non-core claims levied against Frost and BSW must be
tried in the district court.  Defendants assert that many courts
have held that the inability of the bankruptcy court to hold a
jury trial is sufficient grounds for withdrawal of the reference.

Finally, Defendants assert that the withdrawal of the reference to bankruptcy court will promote economy and efficiency, and will expedite the matter.  Defendants believe that such a withdrawal at this time would allow the district court to become fully familiar with the issues by the time the case reaches trial.  Defendants assert that proceedings before the bankruptcy court that may later be transferred to the district court at trial require both courts to become familiar with the issues and create unnecessary delay.  Therefore, Defendants argue that withdrawal of the reference would promote efficiency, as only one court will be required to consider the claims against Frost and BSW.  Additionally, as to these non-core claims, if the bankruptcy court were to hear them, the district court would be required to conduct *de novo* review of the bankruptcy court's findings of fact and conclusions of law.

In opposition, Plaintiff urges the Court to deny Defendants' motion as there is no "cause" shown, as required by Section 157(d), and there is non-fulfillment of the test for withdrawal set forth in Holland American Insurance Co. v. Roy, 777 F.2d 992, 999 (5th Cir. 1985).  First, Plaintiff asserts that the claims (which include both pre- and post-bankruptcy petition conduct)

constitute a core proceeding pursuant to Sections 157(b)(2)(A) and (O), in part because of the bankruptcy court's need to ensure compliance with the Debtor's Plan.  The claims and defenses presented in the adversarial proceeding will require the bankruptcy court's interpretation of the Plan.  Additionally, the claims are the Debtor's single largest remaining asset and will significantly affect distributions to be made under the Plan.

Plaintiff also asserts that Defendants are not entitled to a jury trial, but that even if they are, their argument is premature.  Plaintiff explains that no defendant has actually requested a jury trial, so the bankruptcy court must not instantly give up jurisdiction.[1]  Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters until the case is determined to be ripe for trial by jury.  Plaintiff further argues that withdrawal of the reference would not promote uniformity or economical use of the parties' or court's resources.  Quite to the contrary, it would lead to the district court conducting duplicative proceedings of those in bankruptcy court, with attendant duplicative judicial cost in expense and time.  Plaintiff seems to assume that granting the

---

[1] As subsequently noted, some defendants in the case have made a formal jury demand since the time that Movant-Defendants filed the instant motion.

motion would lead to a separate trial as to the two Movant-Defendants.  As the underlying case has been before the bankruptcy court for almost two years, Plaintiff asks the case to remain in the hands it belongs.  Also asserting that Defendants are forum shopping by attempting to bring this case to the district court, Plaintiff requests that the motion be denied.

In reply, Defendants make four major points.  First, they argue that Plaintiff errs in portraying the claims as "core" simply because the bankruptcy court would administer the proceeds of a potential judgment; this would be the bootstrapping of tort and contract claims into bankruptcy court.  Second, the Court is able to withdraw the reference in whole or in part, in the exercise of its discretion.  Third, postponing the decision to withdraw until a formal jury demand has been made will only delay resolution of an issue that has now been fully briefed.  Fourth, Plaintiff's forum shopping argument is conclusory and unsupported.

## DISCUSSION

Congress has provided that each district court may provide that any or all cases under the Bankruptcy Code (United State Code Title 11) and any or all proceedings arising under the Code or arising in or related to a case under the Code shall be

8

referred to bankruptcy judges for the district.  28 U.S.C. §
157(a).  The Eastern District of Louisiana has so provided via
Local Rule 83.4.1.  Notwithstanding this automatic referral of
claims to the bankruptcy court, the district court in some
instances may withdraw this reference, taking away a case or
proceeding from the bankruptcy court into the district court.
See 28 U.S.C. § 157(d).  This withdrawal may be in whole or in
part, and is classified as either mandatory or permissive.  Id.
Defendants do not base their motion for withdrawal of the
reference on mandatory grounds.  See id. (providing that
withdrawal is mandatory if the court determines that resolution
of the proceeding requires consideration of both the Bankruptcy
Code and other U.S. laws regulating organizations or activities
affecting interstate commerce).

     Permissive withdrawal of the reference to bankruptcy court
may occur on the court's own motion or on the timely motion of
any party, for cause shown.  Id.  What constitutes "cause shown"
is not expressly stated in the statute, but the Fifth Circuit has
given several factors for the district court to consider, in
articulating the foundation for its decision.  See Holland Am.
Ins. Co. v. Succession of Roy, 777 F.2d 992, 998 (5th Cir. 1985).
These factors can be summarized as follows:  (1) whether the

matter at issue is a core or a non-core proceeding, (2) whether the proceedings involve a jury demand, and (3) whether withdrawal would further the goals of (a) promoting uniformity in bankruptcy administration, (b) reducing forum shopping and confusion, (c) fostering the economical use of the debtor's and creditors' resources,[2] and (d) expediting the bankruptcy process.  In re OCA, 410 B.R. at 448.

## A.  Nature of Claims

The first element addresses whether the claims at issue are "core" or "non-core."  The term "core proceeding" is not statutorily defined, but the statute provides an illustrative list that includes the following:

> (A) matters concerning the administration of the estate;
> * * *
> (F) proceedings to determine, avoid, or recover preferences;
> * * *
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> * * *
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . .

---

[2] Some courts characterize this factor as entailing concerns of judicial efficiency.  See, e.g., Travelers Indem. & Ins. Co., 2002 WL 100625, at *4. Cf. In re Tastee Donuts, Inc., 137 B.R. 204, 207 (E.D. La. Jan. 28, 1992) (proceeding not from a numbered list of factors, but considering judicial efficiency).

28 U.S.C. § 157(b)(2).  Subsection 157(b)(2)(A) does not apply
because the claims at issue do not pertain to administration of
the estate.  Subsections (b)(2)(F) and (H) do not apply to the
two Movant-Defendants, because Plaintiff does not allege
fraudulent conveyances or preferential transfers as to the
Defendants that have filed the instant motion.  See Complaint, ¶¶
186-95.  However, these Subsections do apply to the fraudulent
conveyance and preferential transfer counts that are alleged
against other non-Movant-Defendants.[3]  Therefore, there are core
claims alleged against at least some of the defendants in this
case—just not those who have filed the instant motion.

As to the Movant-Defendants, Subsection (b)(2)(O) has
potential applicability.  The arguments in favor of finding its
applicability are twofold:  (1) the claims asserted in the
adversary action are the single largest remaining asset and will
significantly affect distributions made under the bankruptcy
Plan, and (2) the claims and defenses involved in the action will
require the Court's interpretation of that plan.  Subsection

---

[3] The Complaint alleges fraudulent transfers as to what appears to be
less than half of 22 defendants (the GSHS Texas entities, the GSHS Dallas
entities, Walker, GSHS, Jamestown Gaming, Jamestown, and Team Rehab).
Complaint, ¶¶ 187-89.  The Complaint also appears to allege preferential
transfers as to less than half of the 22 defendants (GSHS, Gulf States Dallas,
Gulf States Dallas Holdings, Gulf States Meadows, Gulf States Properties
Dallas, Gulf States New Braunfels Holdings, New Braunfels Properties, Gulf
States New Braunfels, and Gulf States New Orleans).  Id. ¶ 194.

(b)(2)(O) is worded very broadly.  Under its literal language, because the claims at issue could potentially lead to the a large recovery that would provide an asset to be distributed to creditors under the Plan, it is a "proceeding[] affecting the liquidation of the assets of the estate."  See § 157(b)(2)(O). Under such an interpretation, there are core claims alleged against the Movant-Defendants.

Notwithstanding its literal breadth, the Fifth Circuit has declined to give a broad reading to Subsection (O), because to do so would make the entire range of proceedings within bankruptcy jurisdiction fall within the scope of a "core proceeding," which is contrary to legislative intent.  In re Wood, 825 F.2d 90, 95 (5th Cir. 1987).  The Fifth Circuit has held that a core proceeding is one that "invokes a substantive right provided by title 11 or . . . that, by its nature, could arise only in the context of a bankruptcy case."  Id. at 97.  Where the action was simply a state contract action that absent the bankruptcy could have proceeded in state court, it was a non-core proceeding.  Id. In this case, the claims for legal malpractice, breach of fiduciary duty, breach of contract, conspiracy, and fraud are not created by virtue of Title 11.  Nor are they of the sort that could only exist in the context of a bankruptcy case.  The mere

fact that the debtor happens to also be a creditor does not make this a core proceeding.  See In Re McLeod, 30 F.3d 1490, at *2 (5th Cir. 1994) (finding that debtor's suit to collect on promissory note was non-core because the "collection suit had nothing to do with his bankruptcy case except for the happenstance that the creditor was in bankruptcy").  The Debtor would be able to bring these state law claims regardless of whether a bankruptcy case had ever been brought.[4]

The Court finds that there are core claims brought against some defendants as to some counts, but that all counts alleged against the Movant-Defendants are non-core claims.  It is true that the fraudulent transfer and preferential transfer counts are, individually, core claims.  However, viewing the Complaint in its entirety, the core claims cannot be said to predominate.  As the Plaintiff characterizes it, this is a case of a complex scheme to unlawfully deprive the Debtor of its assets, and to conceal such deprivation.  A review of the Complaint shows that the essence of the case is that the defendants caused the Debtor to enter into a series of loan transactions that encumbered

---

[4] Plaintiff does allege post-bankruptcy petition conduct, to some extent, but he does not allege that it predominates over the sizable amount of alleged pre-petition conduct.

Debtor's assets and then diverted the loan proceeds away from the Debtor's use.

There are "core claim" theories of recovery, i.e., the fraudulent and preferential transfer claims that are creatures of federal bankruptcy law.  However, the Complaint clearly alleges many other state law counts:  "conversion" of Debtor's funds (Complaint, ¶ 88), use of Debtor's funds constituting a breach of an operating agreement (id., ¶¶ 100-01), and fraudulent nondisclosure of loans and misrepresentation of Debtor's financial position to Debtor's minority owners (id., ¶ 111). Further, the substantial "state law flavor" of the overall case is demonstrated by the fact that Debtor initially filed suit against several of the defendants in state district court immediately prior to the bankruptcy filing, at which time the suit was dismissed without prejudice.  Id. ¶¶ 114, 117.  It does not appear that the bankruptcy law theories of recovery predominate over the previously mentioned state law theories. Therefore, the Court finds that the presence of non-core claims in the case weighs in favor of withdrawal of the reference.

**B.  Right to Jury Trial**

The next factor is whether a party has demanded a jury trial.  This is a relevant factor because bankruptcy courts in

14

this district are not authorized to conduct jury trials.  Local
Bankruptcy Rule 9015-1 ("Jury trials are not held in this
court."); Travelers Indem. Co. v. The Babcock & Wilcox Co., 2002
WL 100625, at *4 (E.D. La. Jan. 23, 2002).  If the trial of the
claims against the Defendants will be by jury, then at least as
to those Defendants, the case will have to be tried in the
district court.  Although the Movant-Defendants have not yet made
a jury demand, it is clear to the Court that these Defendants are
entitled to a jury trial, which they state they will demand.  The
Seventh Amendment provides a right to a jury trial where the suit
is to ascertain and determine legal rights, as opposed to
equitable rights.  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33,
41 (1989).  There are two prongs of analysis:  (1) whether the
cause of action is similar to 18th-century actions brought in the
courts of England prior to the merger of courts of law and
equity, and (2) whether the remedy sought is legal or equitable
in nature.  Id.  The second factor is more important than the
first.  Id.

    Plaintiff's Opposition makes no serious attempt to argue
that these Defendants are not entitled to a jury trial.  As to
the first prong of analysis, Defendants cite several cases for
the proposition that most, if not all, of the claims raised in

15

the complaint are claims that were traditionally brought in courts of law. See In re Jensen, 946 F.2d 369, 371 (5th Cir. 1991), *abrogated on other grounds*, In re El Paso Elec. Co., 77 F.3d 793 (5th Cir. 1996) (stating that civil conspiracy has its roots in criminal conspiracy, which was triable before a jury in a court of law, and that an action for fraud may be brought in either a court of law or of equity, depending on the circumstances of the case); Debaillon v. Steffes, 195 B.R. 362, 364 (M.D. La. Feb. 5, 1996) ("Courts have consistently held that the Seventh Amendment applies to suits for professional malpractice."); In re Tasch, Inc., 1999 WL 64959, at *3 (E.D. La. Feb. 8, 1999) ("A contract damage claim is a legal action entitled to trial by jury."). As to the second factor—the legal or equitable nature of the remedy sought—Plaintiff seeks damages. See Complaint, ¶ 184 (seeking damages for misappropriated or converted funds, loss of business value, interest, attorney fees, and other damages to which Plaintiff is allegedly entitled). A suit for monetary damages is clearly legal in nature. See, e.g., Ross v. Bernhard, 396 U.S. 531, 533 (1970); Garcia v. Queen, Ltd., 487 F.2d 625, 628 & 628 n.7 (5th Cir. 1973). Thus, Defendants have a right under the Seventh Amendment to a jury trial.

16

Still, the Movant-Defendants have not yet demanded a jury trial.  Defendants cite several cases for the proposition that the bankruptcy court's inability to hold a jury trial where there is a right to a jury trial is sufficient grounds for withdrawal of the reference.  See <u>Smith v. Lucent Techs., Inc.</u>, 2004 WL 515769, at *29 (E.D. La. March 16, 2004) (finding permissive withdrawal appropriate where there was a right to jury trial and claims were non-core); <u>Travelers Indem. Co.</u>, 2002 WL 100625, at *4 (finding that right to jury trial weighed in favor of withdrawal of the reference); <u>In re Harrah's Entm't, Inc. Sec. Litig.</u>, 1996 WL 684463, at *3 (E.D. La. Nov. 26, 1996) (stating that existence of the right "would represent good cause for a permissive withdrawal of the reference"); <u>In re White</u>, 172 B.R. 841, 844 (S.D. Miss. March 21, 1994) (withdrawing the proceedings to district court in part based on existence of right to jury trial).  However, Plaintiff cites <u>In re Healthcentral.com</u>, 504 F.3d 775 (9th Cir. 2007) for the proposition that the bankruptcy court may retain jurisdiction over pretrial matters.

The Court finds that even though the Movant-Defendants have not yet demanded a jury trial, the obvious right to such a trial is a factor weighing in favor of withdrawal of the reference. The <u>In re Healthcentral.com</u> case merely stated that the

17

bankruptcy court is *permitted* to retain jurisdiction over pretrial matters.  Id. at 787.  However, the court based this statement largely on the desire to make use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the action.  Id. at 787-88.  The state law claims raised in the instant proceeding do not require a knowledge of Title 11.  Even to the extent that the Ninth Circuit opinion in In re Healthcentral.com could be applied to the instant facts, this Court finds more persuasive the extant district court decisions in this circuit suggesting that the right to a jury trial is a sufficient ground to weigh in favor of the district court's discretionary choice to withdraw the reference.

Additionally, after the Movant-Defendants filed the instant motion, several other defendants answered the complaint, formally requesting a jury trial.  These defendants are Jamestown, Inc., Jamestown Gaming, LLC, New Braunfels Healthcare Properties, LLC, Gulf States Meadows, L.P., and Gulf States Healthcare Properties of Dallas, LLC.  Bankr. E.D. La. Case 11-1034, Rec. Doc. 123, at 16.  The cause of action for fraud is alleged against Jamestown, Inc. (Complaint, ¶ 172) , who thus has the right to a jury trial under the previous analysis.  Given the need for a jury trial in

this case, it would be inefficient to allow pretrial motion practice to continue in the bankruptcy court, delaying the eventual referral of claims to this Court for resolution at trial.

**C.   Other Factors**

    **1.   Promoting Uniformity in Bankruptcy Administration**

    The resolution by this Court of the claims at issue would not prevent the bankruptcy court from administering the bankruptcy Plan.  If Plaintiff recovers on behalf of the debtor, the distribution of this asset on behalf of the estate could still be achieved in accordance with the Plan.  On the other hand, as Plaintiff indicates, the claims and defenses in this case would require the Court to interpret the Plan, which was confirmed by the bankruptcy court.  Still, there is nothing to suggest that the district court could not or would not adequately construe the Plan as necessary in ruling on the core and non-core claims raised in the instant case.  In any case, the mere fact that the claimant is a debtor in bankruptcy does not prevent his claim from proceeding in district court.  Overall, this factor does not weigh in favor of or against the granting of Defendants' motion.

### 2.  Reducing Forum Shopping and Confusion

One of the Fifth Circuit factors is the reduction of forum shopping.  Plaintiff in conclusory manner raises a forum shopping argument in one sentence, which alleges that the Defendants want to pull this case into district court to be able to delay the speed at which the case will proceed to trial by jury.  Plaintiff points to no evidence to support this allegation. Additionally, while it may be plausible that a litigant in the Defendants' position would pursue the district court as a forum in order to delay the judicial process, it is equally plausible that—in Defendants' words (Rec. Doc. 6, at 6)—a litigant in Plaintiff's position would seek out the bankruptcy court as a forum to "fast-track" state law claims.  Without anything more than mere speculation as to either side's motivation for seeking separate fora, the Court does not find this factor to be relevant.

### 3.  Preserving Judicial Efficiency

The Court finds that concerns of judicial efficiency weigh in favor of withdrawing the reference.  First, because there will be a jury trial, it will be more efficient for this Court to handle pretrial matters so as to be fully acquainted with the case as it makes it way to trial in this Court.  Second, and equally important, if the bankruptcy court were to hear the non-

20

core claims presented in the instant lawsuit, the bankruptcy
judge would only have authority to file proposed findings of fact
and conclusions of law, which this Court would then be obliged to
review *de novo* (assuming the existence of objections to the
bankruptcy court's findings and conclusions).  FED. R. BANKR.
9033(a),(d).  Therefore, Plaintiff's argument concerning the
bankruptcy court's familiarity with the parties and issues after
the two-year underlying bankruptcy case is not persuasive.
Because as to several defendants the proceedings are non-
core—meaning that they could have arisen absent a bankruptcy—they
are not of the sort that are within the peculiar expertise of the
bankruptcy court.

**4.  Expediting the Bankruptcy Process**

The bankruptcy reorganization Plan was confirmed well over a
year ago, in February 2010.  Complaint, ¶ 2.  However,
administration of the estate is ongoing.  Plaintiff suggests that
proceedings in district court take longer than in bankruptcy
court.  However, there is no concrete evidence that withdrawing
the reference will either expedite or slow down the overall
bankruptcy process.  See Mirant Corp. v. The Southern Co., 337
B.R. 107, 123 (N.D. Tex. Jan. 10, 2006) (where the bankruptcy
judge had already confirmed the reorganization plan, the

"expediting-the-bankruptcy-process factor" was not relevant to the withdrawal decision).  Therefore, this factor has no bearing on the Court's decision.

Because of the presence of significant state law claims that are non-core, the need for a jury trial in district court, and the judicial economy to be served, the Court holds that the reference to bankruptcy court should be withdrawn.

**D.  Nature of Withdrawal of the Reference**

Section 157(d) states that "[t]he district court may withdraw, *in whole or in part* . . . ."  28 U.S.C. § 157(d) (emphasis added).  The Court has found that the motion to withdraw the reference should be granted, but the Court must also determine the extent of the withdrawal.  This case involves both core claims (the fraudulent transfer and preferential transfer claims) and non-core claims (the state law claims).  If the Court withdraws the entire case, the 20 of 22 defendants who have not asked for withdrawal of the reference will be pulled into district court along with the Movant-Defendants.[5]  If, on the other hand, the Court only withdraws the reference as to the two Movant-Defendants, there will be separate resolutions of the

---

[5] The Court notes in passing that it is permitted to withdraw the reference on its own motion, absent a motion by any party.  28 U.S.C. § 157(d).

underlying claims in two different courts.  Other conceivable

permutations exist, as well, e.g., withdrawal as to some or all

defendants only as to the state law claims (and leaving the

fraudulent transfer and preferential transfer claims in the

bankruptcy court).  <u>See</u> <u>id.</u> § 157(b)(2)(F),(H) (core proceedings

include proceedings to avoid preferences and to avoid or recover

fraudulent conveyances).  The creation of two sets of proceedings

could create judicial inefficiency, which should be avoided.

This weighs in favor of withdrawal *in whole*.  <u>See</u> <u>In re Tastee</u>

<u>Donuts, Inc.</u>, 137 B.R. 204, 207 (E.D. La. Jan. 28, 1992) (finding

that even where an adversary proceeding involved both core and

non-core matters, in the interests of judicial efficiency, the

reference should be withdrawn for the entire adversary

proceeding).

    The court in <u>Mirant Corp. v. The Southern Co.</u>, 337 B.R. 107

(N.D. Tex. Jan. 10, 2006) encountered issues very similar to

those presented in the case at bar.  In <u>Mirant</u>, the court was

faced with numerous counts in an adversary proceeding filed by

the debtor.  <u>Id.</u> at 109.  The court found that the statutory

reference to "proceedings" "refers to specific claims, causes of

action, or grounds for relief, and not to the entire action."

<u>Id.</u> at 116.  Therefore, the court was required to independently

determine whether each cause of action was core or non-core.  Id.
The court found that certain counts were core and others were
non-core.  Id. at 117-119.  The court also concluded that the
non-core claims in the action were as least as significant as the
core claims, such that the court could not say that the core
claims predominated over the non-core claims.  Id. at 119.  In
considering the remaining factors, the court held that judicial
economy would be served by the district court adjudicating both
core and non-core claims because this (1) eliminated the prospect
of a bankruptcy appeal regarding the core claims and (2)
dispensed with the need for the district court to conduct *de novo*
review regarding non-core claims.  Id. at 122.  The court ordered
the entire adversary proceeding withdrawn to the district court.
Id. at 125.

     The instant case is similar in that it involves core and
non-core claims.  The core claims do not appear to predominate;
the non-core claims are clearly significant theories of recovery
pertaining to the alleged fraudulent scheme to deprive the Debtor
of its assets.  It is in the interest of judicial efficiency for
the entire underlying case to be heard in district court:  this
avoids the need for *de novo* review of the bankruptcy court's
findings and conclusions on the non-core claims.  Therefore, the

Court holds that the motion to withdraw the reference should be granted as to all the claims presented in the underlying proceeding, as to all defendants.

For the foregoing reasons, **IT IS ORDERED** that Defendants' **Motion to Withdraw the Reference (Rec. Doc. 1)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the underlying case, Bankruptcy Eastern District of Louisiana Case No. 11-1034, should be transferred to District Court in the Eastern District of Louisiana, and that the case be carried on the docket of this Court under the style and number shown in the caption of this Order and Reasons.

New Orleans, Louisiana this 25th day of August, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE