UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE GULF STATES LONG TERM ACUTE CARE OF COVINGTON, L.L.C. | CIVIL ACTION<br><br>NO: 11-1659<br><br>SECTION: H(5) |
| DAVID V. ADLER,<br>DISBURSING AGENT<br>    Plaintiff,<br>vs. | JUDGE TRICHE MILAZZO<br><br>MAGISTRATE CHASEZ |
| GREGORY M. WALKER, ET AL<br><br>    Defendants | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIRD AMENDED COMPLAINT IN INTERVENTION**

NOW comes SODEXO OPERATIONS, LLC (f/k/a Sodexho Operations, LLC) ("hereafter "Sodexo"), who, as Plaintiff in Intervention in the above captioned adversary proceeding amends its original, first and second amended complaints as follows:

1.

The following paragraph is added in support of each and every claim:

95. d. BSW/Frost, in connection with their provision of both legal services and non-legal services (acting as escrow agent, wiring funds, etc.) facilitated the flow of money through the Gulf States network of companies for the benefit of Greg Walker and Robert Maurin and to the disadvantage of the entities in the network and their creditors, including Sodexo.

2.

The following paragraph is substituted for paragraph 160 in the prior complaints, in support of each and every claim:

160. a. In an effort to avoid discovery in Sodexo's Suit against GSHS, Inc. (particularly depositions of GSHS, Inc. set for March 24, 2009) and to amicably resolve Sodexo's potential legal action for attachment of the assets of the Hammond Rehabilitation Hospital, LLC, BSW/Frost wrote Sodexo through its counsel of record on March 20, 2009, stating:

> We have verified and confirm that any and all proceeds from the sale of the assets of Hammond Rehabilitation Hospital, LLC ("Hammond Rehab"), will be held in escrow after the closing of the sale for the benefit of the creditors of Hammond Rehab. The proceeds of the sale will be distributed to creditors pursuant to a judicially supervised liquidation.
> We understand that your client is considering filing a writ of attachment with respect to Defendants' assets. In order to do so, your client is required to investigate whether the writ of attachment is proper under Louisiana Code of Civil Procedure Article 3541. This letter puts you and your client on notice that your client <u>cannot</u> meet the requirements of that article. If your client seeks to attach any of the Defendants' assets, we will pursue a damage action against your client for interfering with the potential sale about which you are now inquiring.

b. Upon information and belief, BSW/Frost did not act in good faith to obtain the genuine consent and authority from each of their then existing clients who had an interest (direct or indirect) in the subject matter of the letter, including the sale proceeds referenced therein to make the statements they made in the March 20, 2009 letter.

c. The proceeds of the sale of the Hammond Rehabilitation Hospital, LLC were not "held in escrow after the closing of the sale for the benefit of the creditors of Hammond Rehab and were not distributed to creditors pursuant to a judicially supervised liquidation."

d. Obviously, BSW/Frost had a duty to carry out the agreement they made in an effort to avoid attachment of their clients' assets. BSW/Frost agreed to place the proceeds in a judicially supervised liquidation so that the provisions of La. C.C. P. art. 3541 would not be met and so that Sodexo would not have grounds to seek a writ of attachment to seize the assets.

e. BSW/Frost invited Sodexo to rely upon their representation and even threatened Sodexo that if it did not so rely and instead applied for the writ of attachment, Sodexo would be sued by BSW/Frost's clients. Having made those representations, BSW/Frost had a duty to comply with their agreement or to advise Sodexo when it was apparent that they would not. BSW/Frost breached that duty to the detriment of Sodexo.

3.

The following paragraph is substituted for paragraph 167 in the prior complaints, in support of each and every claim:

167. a. BSW/Greg Frost represented Gulf States Health Services, Inc. as of August 28, 2008, when Robert Maurin was an officer and director of the company;

b. On information and belief, BSW/Greg Frost *drafted* the 19th JDC petitions in the suits entitled *Jamestown Gaming, LLC v. GSHS, Inc.,* #580,473 Sec. 26 and *Jamestown, Inc. and Robert A. Maurin, III v. GSHS, Inc., et al,* # #579,227 Sec. 25 on the docket of the 19th Judicial District Court for the State of Louisiana, even though BSW/Frost formally appeared in the suit only on behalf of the defendants. In actuality, BSW/Frost reported to and assisted both Maurin (Plaintiff) and Walker (Defendant) as Maurin and Walker "scurried" to have the suits filed, related documents prepared or gathered, and consent judgments entered in an attempt to place assets of Walker and Gulf States out of the reach of third party creditors such as Sodexo.

c. On June 8, 2009 – the day before the 19th JDC suit by Maurin/Jamestown, Inc. against Walker/GSHS was filed, BSW/Frost emailed a copy of the suit to Joe Justice of RIM Associates so that Mr. Justice could execute a waiver of service for the suit against the Gulf States LTAC of Dallas entity. The copy of the suit which Mr. Frost (purported defense attorney)

sent with the waiver of service to Mr. Justice had not yet been signed by Mr. Woolridge, counsel for Maurin (purported plaintiff's attorney);

  d. When Mr. Justice emailed the executed waiver back on June 8, 2009, he copied Robert Maurin on the email. Mr. Justice later explained by email dated August 19, 2009 with regard to the waiver of service, "This is doc[ument] I signed after I made a phone call to Bob [Maurin] and told him I would sign if he would make sure that RIM got paid on the Meadows Dallas and RehabCare transaction and he said he would because if he didn't get this executed, Greg would get the money and not give him any.." (RIM Deposition, Exhibit 29) In other words, Robert Maurin wanted to get the money from the Texas deals without it going to Gulf States Health Services, Inc. and him then perhaps receiving a share.

  e. BSW/Greg Frost agreed (between June 17 and July 20, 2009) to consent judgments in the 19th suits which were recorded in June 2009 and on July 28 and July 29, 2009. In each suit, the petition and consent judgment were filed at the same time, and the judgment was walked through to the judge for signature on the same date suit was filed. (Documents from 19th JDC bates labeled PI000183-221)

  f. BSW/Greg Frost stated on July 29, 2009 that they represented Greg Walker and Robert Maurin in connection with Gulf States deals in Texas; (as reflected in document bates labeled RIM2P0274 written by Greg Frost/Breazeale, Sachse &Wilson stating: "So that there is no misunderstanding, this Firm is responding on behalf of Gulf States Meadows, LP, Mr. Maurin and Mr. Walker." ) and

  g. After the judgment had been entered in this 19th JDC suit (in which BSW/Greg Frost were representing Greg Walker/GSHS, Inc. adverse to Robert Maurin) on June 17, 2009, BSW/Greg Frost's associate, Eric Landry, forwarded to Robert Maurin an email with attachment

he previously sent to Greg Walker regarding one of the defendant entities in the 19th JDC suit. The email had read "Please review and let me know if these changes are okay and if we need any further changes"; when forwarded to Robert Maurin, it said "Bob, I guess you need to get this instead of Greg." Robert Maurin responded to the BSW attorney (purportedly his "opposing" counsel in the 19th JDC suit), "Do I now own his [Greg's] interests in the operations at Dallas Meadows?" The BSW attorney responded, "You own his 85% interest in Gulf States of Dallas Holdings, LLC, which owns approximately 60% of the membership interests of Gulf States LTAC of Dallas, LLC. I don't know about Meadows". Maurin apparently relied on that information from "opposing" counsel as he forwarded it on to RIM Associates saying "For your info." David Woolridge, the attorney who officially appeared for Robert Maurin in the 19th JDC suits, was not copied on the email string. (RIM Deposition, Exhibit 39) The 19th JDC suits were "suits between friends" and clients of the same lawyer to fraudulently transfer assets away from and to discourage collection by bona fide creditors such as Sodexo.

4.

The following paragraph is substituted for paragraph 168(a) in the prior complaints, in support of each and every claim:

168. a.    Six days later, on June 30, 2009, the assets of the Gulf States LTAC of Dallas were sold to a third party, RehabCare. Upon information and belief, prior to the sale, BSW/Frost were involved with Maurin and Walker in planning and preparing for the sale of the assets of Gulf States LTAC of Dallas, LLC-- owned in whole or in part by Gulf States Holding of Dallas, LLC -- the *Defendant* (purportedly adverse to Maurin) in one of the 19th JDC; that involvement by BSW/Frost included planning wire transfers for Gulf States Holdings of Dallas, LLC's receipt of proceeds from the sale.

5.

In all other respects, Sodexo maintains its original complaint and first amended complaint in their entirety subject only to this amendment.

WHEREFORE, Sodexo prays that after due proceedings are had, its judgments will be enforced and satisfied as prayed for herein.

RESPECTFULLY SUBMITTED,

**J.H. BARNEY LAW FIRM, LLC**

By: ___/s/Jane H. Barney_____
Jane H. Barney (La. 22246)
2561 CitiPlace Ct., Suite 750-161
Baton Rouge, LA  70808
Telephone:  (225) 235-9016
Barney@JHBarneyLaw.com

COUNSEL FOR PLAINTIFF-IN-
INTERVENTION, SODEXO
OPERATIONS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Second Amended Complaint has been served upon the following parties via electronic mail:

☐Robert A. Maurin, III; Jamestown, Inc.; Jamestown Gaming, LLC; New Braunfels Healthcare Properties, LLC; Gulf States Meadows, L.P.; and Gulf States Healthcare Properties of Dallas, LLC through their counsel of record: Barry W. Miller via bmiller@hellerdraper.com;

☐David Adler, through his attorney, R. Joshua Koch, via jkoch@kochschmidt.com and koch.josh610@gmail.com;

☐RSUI Indemnity Co, through his attorney George D. Fagan via gfagan@leakeandersson.com;

☐Breazeale Sachse & Wilson, LLP, through his attorney Stephen H. Kupperman via skupperman@barrassousdin.com;

☐Gregory D. Frost, through his attorney, Michael A. Balascio, via mbalascio@barrassousdin.com;

☐RSUI Indemnity Co., through its attorney Margaret Frohn Swetman via mswetman@leakeandersson.com.

☐Gregory M. Walker, through his attorney, John Anderson via jca@andersonfirm.net.

on this 21st day of March, 2013.

                                               __/s/Jane H. Barney_____
                                                   Jane H. Barney