**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|                                          |                        |
|------------------------------------------|------------------------|
|                                          | **CIVIL ACTION**       |
| **IN RE GULF STATES LONG TERM**          |                        |
| **ACUTE CARE OF COVINGTON, L.L.C.**      | **NO: 11-1659 c/w 13-508** |
|                                          | **SECTION: "H"(5)**    |

**ORDER AND REASONS**

Before the Court is a Motion to Dismiss (R. Doc. 426) filed by Defendants Gregory Frost and

Breazeale, Sachse & Wilson, LLP (collectively "Frost & BSW").  For the following reasons, the Motion

is GRANTED, and Plaintiff in Intervention Sodexo Operations LLC's ("Sodexo") claims against Frost

& BSW are DISMISSED WITH PREJUDICE.

**BACKGROUND**

This case has a long and tortured history.  Plaintiff David Adler is the disbursing agent for

Debtor Gulf States Long Term Acute Care of Covington, LLC.  Debtor is one of several long-term

healthcare facilities in the Gulf region under common ownership and control (the "Gulf States entities").  On April 20, 2009, Debtor filed for voluntary Chapter 11 bankruptcy, and on February 22, 2010, the bankruptcy court confirmed Debtor's Third Amended Plan of Reorganization.  Adler filed an adversary complaint on April 18, 2011 for the benefit of Debtor and its creditors against numerous Gulf States entities, alleging acts of misconduct related to Debtor's finances.  The district court withdrew the reference to bankruptcy court on August 25, 2011.

On November 23, 2011, Sodexo filed an intervenor complaint to collect money judgments previously obtained against certain Gulf States entities (the "Judgment Debtors").  Sodexo sued the same defendants as in the main demand with two minor changes.[1]  Sodexo alleges the defendants in intervention unlawfully diverted assets from the Judgment Debtors to themselves in order to frustrate Sodexo's collection efforts.  Sodexo further alleges Frost & BSW provided legal counsel for the Judgment Debtors and other Gulf States entities during this time.  Accordingly, Sodexo contends the defendants in intervention—including Frost & BSW—are solidarily liable with the Judgment Debtors for the money judgments.

On October 3, 2012, the Court granted Frost & BSW's motion to dismiss Sodexo's first amended complaint and dismissed Sodexo's claims without prejudice.  Sodexo filed a second amended complaint on October 23, 2012.  Frost & BSW responded with a second motion to dismiss

---

[1] (1) Gulf States Health Services, Inc. was not named as a defendant, and (2) Robert A. Maruin, III, was added.

on November 6, 2012.  On the last possible day for amending pleadings, Sodexo filed a third amended complaint, which added additional allegations of fraud and misconduct against Frost & BSW.  Accordingly, the Court denied the second motion to dismiss as moot.  On April 2, 2013, Frost & BSW filed yet another motion to dismiss, this one directed at Sodexo's third amended complaint.

On June 20, 2013, Sodexo informed the Court that settlement negotiations were ongoing, which, if successful, would resolve Sodexo's claims. Sodexo requested the Court not take any action on, *inter alia*, Frost & BSW's third motion to dismiss.[2]  Accordingly, on August 5, 2013, the Court denied the motion without prejudice, to be re-urged should settlement negotiations prove unsuccessful.  Settlement was not achieved to Sodexo's satisfaction.  Thus, on November 5, 2013, Frost & BSW re-urged their third motion to dismiss.   Sodexo opposed the motion and contemporaneously sought leave to file a fourth amended complaint. The motion to amend was referred to the magistrate judge assigned to this case, who denied the motion without prejudice on December 18, 2013. The magistrate judge instructed Sodexo to raise the issue of amendment by filing a supplemental opposition to Frost & BSW's third motion to dismiss.[3]  Sodexo filed the supplemental opposition on January 5, 2014.  The Court subsequently denied Sodexo's request to file a fourth amended complaint, choosing instead to adjudicate the instant Motion on the basis of the allegations in the third amended complaint.

---

[2] Frost & BSW did not oppose this request.

[3] The net effect of this ruling was to re-refer the motion for leave to amend to the undersigned.

**LEGAL STANDARD**

I.    <u>Motion to Dismiss—Fed. R. Civ. P. 12(b)(6)</u>

      To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949–50.

      To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955). Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays*

4

*Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

II.    Fraud—Fed. R. Civ. P. 9(b)

Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6)." *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Fifth Circuit precedent "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 605 (5th Cir. 1974)). Although fraud may be pleaded on information and belief when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge . . . . the complaint must set forth a factual basis for such belief." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 385 (5th Cir. 2003). Thus, under no circumstances may fraud be based on speculation or conclusory allegations. *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998).

**LAW AND ANALYSIS**

Sodexo's third amended complaint appears to assert causes of action against Frost & BSW

for negligent misrepresentation, violations of the Louisiana Rules of Professional Conduct, and intentional tortious conduct, including fraud.[4]  Frost & BSW contend Sodexo has failed to plead sufficient facts in support of these claims.  Alternatively, they contend Sodexo's claims have prescribed.  Because the Court finds Sodexo has failed to state a claim upon which relief can be granted, it does not address Frost & BSW's prescription argument.

The issue presented is whether a plaintiff may assert claims against his adversary's attorney for acts ostensibly undertaken on behalf of the client.  The answer depends on whether the plaintiff's claims are grounded in negligence or instead in intentional tort.  *See Penalber v. Blount*, 550 So. 2d 577, 578 (La. 1989).  The former are not cognizable as a matter of Louisiana law.  *See id.*  The purpose of this bright-line rule is to "prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client."  *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994).  Thus, an attorney should not be hampered by fear of personal liability for negligently injuring an adverse party.  *See Penalber*, 550 So. 2d at 581.

Unlike a cause of action sounding in negligence, an attorney may held be held personally

---

[4] Combing through Sodexo's pleadings has been a particularly arduous task.  Rather than file a superseding complaint, each amended complaint incorporates all previous complaints, except where indicated to the contrary.  Sodexo has also incorporated the original adversary complaint filed by Adler. Consequently, the Court has been forced to cross-reference more than 140 pages of pleadings across 5 separate documents. "[S]uch a garrulous style is not an uncommon mask for an absence of detail." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  Moreover, Sodexo's amended pleadings do not identify the specific causes of action asserted against Frost & BSW.  The Court would welcome such guidance when reviewing pleadings so prolix.

liable for intentionally tortious conduct that injures a non-client.  *Id.* at 582.  This liability derives from Article 2315, *see id.*, the fountainhead of Louisiana tort law.[5]  *Walls v. Am. Optical Corp.*, 740 So. 2d 1262, 1275 (La. 1999).  In order to prevail on a theory of intentional tort, the Louisiana Supreme Court initially stated that a plaintiff need only show the defendant-attorney generally intended to invade his interests in a way the law forbids.  *See Penalber*, 550 So. 2d at 582.  Thus, an attorney could be liable even if he did not specifically "desire to do any harm."  *Id.* (quoting *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)).  More recently, however, the Louisiana high court has indicated that a plaintiff must show specific malice or intent to cause direct harm.  *See Montalvo*, 637 So. 2d at 127.  Thus, a non-client's cause of action against an attorney has narrowed. *See Congress Square Ltd. P'ship v. Polk*, No. 10–317, 2011 WL 837144, at *10–11 (E.D. La. Mar. 4, 2011) (recognizing more onerous standard articulated in *Montalvo*); *Blanchard v. Blanchard*, 112 So. 3d 243, 250–51 (La. Ct. App. 1st Cir. 2012) (same).  As one court has explained, "[a] litigant who wishes to sue his adversary's attorney must [now] show that the attorney acted with a specific malice or intent to personally inflict direct harm upon his client's adversary and with full knowledge that his conduct would cause such harm."  *In re Succession of Carroll*, 72 So. 3d 384, 389 (La. Ct. App. 2d Cir. 2011).

Given the foregoing, Sodexo's negligence-based claims fail as a matter of law.  Thus, the

---

[5] Article 2315 provides in pertinent part: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code. art. 2315A.

7

issue before the Court is whether Sodexo's third amended complaint states a claim for intentional tortious conduct.  As explained more fully below, the Court answers this question in the negative.

Sodexo claims Frost & BSW "actively and willingly participated in a conspiracy with Greg Walker and Robert Maurin to protect the interests of Walker and Maurin to the detriment of the individual entities they owned, and, particularly, to the detriment of the entities' arms-length creditors such as Sodexo."  (R. Doc. 438 at p. 10).  The facts pleaded, however, do not support this contention.  Many of the allegations are vague, bare-bones assertions that lack sufficient corroborating details.[6]  Others merely account for the legal services rendered by Frost & BSW and contain no indicia of scienter.[7]  *Cf. Castle v. Castle*, 123 So. 3d 1267, 1272 (La. Ct. App. 3d Cir. 2013)

---

[6] *See, e.g.*, R. Doc. 244 at ¶175 ("BSW/Frost made written statements (including those in filing and/or recordings) in state and federal court for the purpose of rendering Gulf States entities, including GSHS, Inc., "judgment-proof" and putting assets out of reach of Sodexo."); *id.* at ¶179 ("BSW/Frost planned and facilitated transactions involving their clients Maurin and/or Walker which moved assets out of the companies which owed Sodexo's debts . . . such that they would not be available to satisfy Sodexo's judgments once those judgments were obtained and sought to be enforced by Sodexo."); *Id.* at ¶180 ("BSW/Frost assisted their then existing clients who had an interest (direct or indirect) in the assets of the companies . . . in the Gulf States health services business enterprise in obtaining an unjust advantage *vis a vis* the debts owed Sodexo."); R. Doc. 303 at ¶95(d) ("BSW/Frost, in connection with their provision of both legal services and non-legal services (acting as escrow agent, wiring funds, etc.) facilitated the flow of money through the Gulf States network of companies for the benefit of Greg Walker and Robert Maurin and to the disadvantage of the entities in the network and their creditors, including Sodexo.").

[7] *See, e.g.*, R. Doc. 244 at ¶94(d)(ii) ("Greg Frost has always represented Gulf States . . . and . . . it was Greg Frost's role to keep track of who was a member of which Gulf States entity."); *id.* at ¶94(d)(iii) ("[A]t one point, Greg Frost advised the CFO of Gulf States Health Services, Inc. that Bernard Walker was no longer a shareholder and had no right to review financial records of the company although Bernard Walker never saw or signed any documents removing him as a director of the company."); *id.* at ¶94(vii) ("[F]rom time to time, and particularly with regard to a New Orleans entity, Greg Frost would act in a sort of trustee role distributing the sale proceeds after a sale; he testified that on occasion, Greg Walker told him that Greg Frost

("This demonstration of the adversarial nature of our legal system does not amount to an intentional tort by an attorney against a non-client in the course of litigation.").  But the most fatal defect in Sodexo's pleadings is the failure to allege instances in which Frost & BSW specifically intended to cause direct harm to Sodexo.[8]  At most, Sodexo alleges general intent.  *See, e.g.*, R. Doc. 303 at ¶167(b) ("BSW reported and assisted both . . . Maurin and Walker . . . [to have] consent judgments entered in an attempt to place assets of Walker and Gulf States out of the reach of third [sic] party creditors *such as* Sodexo") (emphasis added).  As *Montalvo* makes clear, however, the defendant-lawyer must specifically intend to cause the plaintiff direct harm.  While this distinction may seem hyper-technical, it is mandated by Louisiana jurisprudence, which "subscribes to the

---

was in charge of the funding from sales."); *id.* at ¶152 ("In Sodexo's Suit, BSW/Frost represented Greg Walker, GSHS, Inc., four operating entities, and one holding company on the merits of the case prior to final judgment. During post-judgment discovery in Sodexo's Suit, BSW/Frost represented Robert A. Maurin, III."); *id.* at ¶166 ("Maurin and Walker were both represented by the same counsel, BSW/Frost, in connection with Gulf States Texas deals.  But they were obtaining judgments between themselves in the 19th JDC in an effort to transfer assets among the Gulf States entities and discourage creditors such as Sodexo from pursuing collection of the debts owed them in an effort to benefit Robert Maurin over other creditors of Gulf States.");  *id.* at ¶168(b) ("BSW/Frost on behalf of GSHS, Inc. and various Gulf States entities finally joined in a joint motion for approval of a consent judgment in the Middle District suit in favor of Sodexo on August 14, 2009.  Of course, by then the assets of GSHS, Inc. and Sodexo's other judgment debtors had been depleted."); *id.* at ¶176 ("BSW/Frost took steps to stave off discovery and stall Sodexo's claims . . . including bumping scheduling order dates in Sodexo's suit; [and] deferring . . . depositions.").

[8] Sodexo chides this Court for its alleged failure to consider Sodexo's adoption of Adler's original complaint.  Quite the contrary, the Court reviewed the allegations in Adler's complaint but found them irrelevant.  Adler's complaint alleges misconduct that caused damage to the debtor involved in the underlying bankruptcy proceeding.  Nowhere is Sodexo mentioned by name.  Thus, the Court cannot fathom how allegations in Adler's complaint could demonstrate that Frost & BSW specifically intended to harm Sodexo.

9

traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf."  *Montalvo*, 637 So. 2d at 130; *Penalber*, 550 So. 2d at 581.  Consistent with this view, Louisiana courts routinely dismiss on the pleadings a non-client's claim against an attorney.[9]  Furthermore, Sodexo has not identified any case law, nor has this Court found any, in which a cause of action has been maintained in circumstances similar to the case at bar.

Sodexo has also failed to state a claim against Frost & BSW for fraud.  Under Louisiana law, a fraud or intentional misrepresentation claim has three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) which causes justifiable reliance and injury.  *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).  "Fraud may also result from silence or inaction."  La. Civ. Code art. 1953.  In order to find fraud from silence or suppression of the truth, there must exist a duty to speak.  *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992).  A duty to speak is not presumed and will only arise in "special circumstances."  *See id.*  Whether such a duty exists is a question of law.  *Kedlec Med. Cent. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 420–21 (5th Cir. 2008).

Sodexo's fraud claim stems primarily from allegations related to a March 20, 2009 letter

---

[9] *See, e.g.*, *Montalvo v. Sondes*, 637 So. 2d 127 (La. 1994); *Castle v. Castle*, 123 So. 3d 1267 (La. Ct. App. 3d Cir. 2013); *Devers v. S. Univ.*, 712 So. 2d 199 (La. Ct. App. 1st Cir. 1998); *Landry ex rel. Landry v. BAC Home Loans Servicing*, No. 12–1046, 2013 WL 1767958 (E.D. La. Mar. 4, 2014).

from Frost & BSW to Sodexo.[10]   According to Sodexo, the letter provides as follows:

> We have verified and confirm that any and all proceeds from the sale of the assets of Hammond Rehabilitation Hospital, LLC ("Hammond Rehab"), will be held in escrow after the closing of the sale for the benefit of the creditors of Hammond Rehab. The proceeds of the sale will be distributed to creditors pursuant to a judicially supervised liquidation.
>
> We understand that your client is considering filing a writ of attachment with respect to Defendants' assets. In order to do so, your client is required to investigate whether the writ of attachment is proper under Louisiana Code of Civil Procedure Article 3541. This letter puts you and your client on notice that your client cannot meet the requirements of that article. If your client seeks to attach any of the Defendants' assets, we will pursue a damage action against your client for interfering with the potential sale about which you are now inquiring.

R. Doc. 303 at ¶160(a).  Sodexo alleges that contrary to the representations in the first paragraph of the letter, the proceeds from the sale of Hammond Rehab's assets were not held in escrow or distributed in a judicial liquidation.  *Id.* at ¶160(c).  Sodexo further alleges that Frost & BSW "failed to retract the[se] statements . . . when it became apparent to them that the verification made therein would not be fulfilled."  R. Doc. 244 at ¶178.  In other words, Sodexo alleges Frost & BSW had a duty to speak.

One of the "special circumstances" in which there exists a duty to speak is when the parties have entered a fiduciary relationship.  *Greene,* 593 So. 2d at 632.  "The defining characteristic of

---

[10] Sodexo's memoranda in opposition are peppered with the term "fraud."  As explained *supra,* however, fraud in the delictual sense derives from an affirmative misrepresentation.  Sodexo's allegations mostly relate to fraudulent conveyances or what Sodexo refers to as "asset stripping."

a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 648 (La. 2007).  In determining whether one party owes a fiduciary duty to another, a court may consider (1) whether the party was retained "individually and independently;" (2) whether there is a contract or agency relationship between the parties; and (3) whether the parties have a co-ownership interest in the matter in dispute. *See id.*

It is clear that Sodexo has not pleaded facts sufficient to evidence a fiduciary relationship between itself and Frost & BSW.  Frost & BSW undertook to act primarily for the benefit of their own clients; not Sodexo.  Moreover, the defendants in Sodexo's complaints retained counsel "individually and independently."  Finally, there is no contractual nor agency relationship between Sodexo and Frost & BSW.  At most, the parties have a co-ownership interest in the assets of the Judgment Debtors.  But this factor cannot by itself create a fiduciary relationship.

Sodexo nonetheless contends that other special circumstances are present from which a duty to speak arises.  First, it argues Rule 8.4(c) of the Louisiana Rules of Professional Conduct prohibits an attorney from engaging in fraud, dishonesty, or misrepresentations.  Even assuming a cause of action may be derived from this Rule, it does not lie in this case.  Sodexo has failed to allege intentional conduct sufficient to state a claim against Frost & BSW under *Montalvo*.  As the Louisiana Supreme Court has recognized, "[n]ot even the Rules of Professional Conduct create

12

actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary." *Penalber*, 550 So. 2d at 581. Second, Sodexo appears to argue the fiduciary relationship that existed between itself and Frost & BSW's clients can somehow be imputed to the lawyers themselves.[11]  Sodexo cites no authority for this proposition.  Finally, Sodexo argues this case is unique because Frost & BSW affirmatively represented that sale proceeds would be placed in a judicially supervised liquidation. As "attorneys and officers of the court," Sodexo contends Frost & BSW had an obligation to comply with or correct this representation.  This argument is duplicative of the first and therefore fails for the same reasons. *Cf. Plaquemines Parish Comm'n Council v. Delta Dev., Inc.*, 502 So. 2d 1034, 1040 (La. 1987) ("In no relationship is the maxim that 'no man can serve two masters' more rigidly enforced than in the attorney-client relationship.") (quoting *Parkerson v. Borst*, 264 F. 761, 765 (5th Cir. 1920)); *accord Scheffler*, 950 So. 2d at 652.

Even assuming *arguendo* Frost & BSW had a duty to correct their alleged misrepresentation, Sodexo's fraud claim would still fail.  Sodexo has not pleaded facts sufficient to establish that it was reasonable to rely  on Frost & BSW's representations in the March 20, 2009 letter.  Moreover, it is unclear how any justifiable reliance thereon harmed Sodexo.

---

[11] The Court makes no finding as to whether such a fiduciary relationship exists.

**CONCLUSION**

Through its multiple amended pleadings, Sodexo has constructed a tortuous maze of superseded allegations, additional allegations, and allegations adopted by reference.  The Court has painstakingly navigated this maze.  Unfortunately for Sodexo, there is no cheese at the end.  Sodexo's remedies lie not with Frost & BSW but with their clients.  The Motion to Dismiss is GRANTED, and Sodexo's claims against Frost & BSW are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this 21st day of April, 2014.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

14